**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF MISSOURI**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| VALLEY FOOD SERVICES, LLC, | ) | Case No. 06-50038 |
| | ) | |
| Debtor. | ) | |
| | ) | |
| OFFICIAL COMMITTEE OF | ) | |
| UNSECURED CREDITORS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adversary No. 06-4129 |
| | ) | |
| THE MISSION BANK, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM ORDER**

Does the Official Committee of Unsecured Creditors ("Committee") – appointed in this case prior to its conversion to a chapter 7 bankruptcy – have standing to bring this adversary action to avoid the liens of the Debtor's primary lender? That is the question raised by the motion to dismiss filed by Mission Bank ("Bank"), the Defendant. The Bank contends that the Complaint should be dismissed because the Committee lacks standing to bring the action, which was filed on May 8, 2006. The Committee, on the other hand, maintains that it has standing pursuant to the Court's order approving post-petition financing for the then debtor-in-possession, Valley Food Services, LLC.[1] Alternatively, in its response to the Bank's motion to dismiss, the Committee seeks an order granting the Committee standing on a *nunc pro tunc* basis.

The Court held a hearing on the sole issue of the Committee's standing on July 24, 2006, at which time the Committee and the Bank offered oral arguments in support of their respective positions. The chapter 7 trustee appointed to this case upon its conversion, Maureen Scully, also appeared, stating her endorsement of the Committee's position. At the conclusion of hearing, the Court took the matter under advisement. The Court is now ready to rule.

---

[1] The case converted to a chapter 7 bankruptcy after the Committee initiated this adversary proceeding, so Valley Food Services, LLC is no longer a debtor-in-possession.

For the reasons stated below, the Court will grant the Bank's motion to dismiss on the grounds that the Plaintiff lacks standing to bring this action. Dismissal of the adversary proceeding renders the Committee's cross-motion moot, inasmuch as the motion was improperly filed in the adversary proceeding instead of in the main case, so the Committee's cross-motion will be denied.[2]

## **ANALYSIS**

As a general rule, a creditor or creditors' committee lacks standing to assert avoidance actions or other legal claims against third parties.[3] The Bankruptcy Code confers standing to pursue these actions only on a trustee or debtor-in-possession.[4] Some courts, however, have allowed a creditor or committee to pursue (or settle) a debtor's claims in two limited circumstances – where the debtor or trustee consents to the action being brought by the creditor or committee[5] or where the party seeking to pursue the debtor's claims can demonstrate that "derivative standing" is appropriate. In determining whether derivative standing is appropriate, courts look at several factors, including whether the claim asserted by the committee is colorable;[6] whether the claim would benefit the estate based on a cost-benefit analysis;[7] whether the debtor unjustifiably refused to pursue the claim;[8] whether pursuing the claim is within the best interests of the bankruptcy estate;[9] and whether pursuing the claim is "necessary and beneficial to the fair and efficient resolution of the bankruptcy

---

[2] The Court's denial of the cross-motion on these grounds is without prejudice to the Committee re-filing the motion in the main case. However, the Committee should be aware that the Court has reviewed the cross-motion and does not believe that it states grounds sufficient to warrant a grant of standing under the standards established by the case law discussed herein.

[3] *See In re Chapman Lumber Co. Inc.*, 343 B.R. 217, 220-21 (Bankr. N.D. Iowa 2006) (citations omitted).

[4] *See In re Merrifield*, 214 B.R. 362, 365 (B.A.P. 8th Cir. 1997).

[5] *See In re Smart World Technologies, LLC*, 423 F.3d 166, 176 n.15 (2nd Cir. 2005).

[6] *See In re STN Enterprises, Inc.*, 779 F.2d 901, 905 (2nd Cir. 1985).

[7] *In re The Gibson Group, Inc.*, 66 F.3d 1436, 1442 (6th Cir. 1995).

[8] *STN Enterprises, Inc.*, 779 F.2d at 905.

[9] *In re Baltimore Emergency Services II*, 432 F.3d 557, 561 (citing *In re Commodore International*, 262 F.3d 96, 100 (2nd Cir. 2001)).

proceedings."[10]

In this case, the Debtor (as the debtor-in-possession) did not consent to the Committee's bringing this action against the Bank, so the only way the Committee could have legitimately filed this adversary proceeding is if the Court granted standing upon proof that pursuing the litigation meets the requirements listed above. The Court has not done so.

The Committee argues that the Court's March 8, 2006 order ("Final Order") approving, *inter alia*, post-petition financing for the Debtor granted the Committee standing to avoid the Bank's security interests in assets of the estate or to otherwise challenge the Bank's claims against the estate. Specifically, the Committee argues that paragraph 9 of the Final Order accomplishes this. Paragraph 9 provides:

> The provisions of Paragraph 8, above shall be without prejudice to the right of any subsequently appointed Creditors' Committee, or, if no Creditors' Committee is formed, any party in interest with requisite Court-approved standing, to seek to disallow the Lenders Claim, avoid any security or collateral interest in the assets of the Debtor claimed by the Lender, or to seek the disgorgement of all or any part of any payment made by the Debtor to the Lender. Any such Creditors' Committee or other party with standing shall have Sixty (60) calendar days from the entry of the Final Order within which to file an objection or commence an adversary (as may be appropriate) with respect to the Lender's claims or security interest, payments made to the Lender, or any other claims or causes or actions as to the Lender.

Certainly, a colorable argument can be made that this provision does imply that the Committee has standing to pursue claims against the "Lender," *i.e.*, the Bank; however, this implicit reference to the Committee as a party with standing is insufficient to actually *confer* standing on the Committee, particularly in view of what has taken place in this case.

The Committee has never presented any evidence to meet the requirements discussed above for establishing derivative standing. The Committee has simply argued for "automatic" standing that would obviate the need for meeting those requirements. The Debtor has vigorously opposed such an automatic and express grant of authority to allow the Committee to bring an action against the Bank and other creditors, and has asserted that the Committee should be required to establish grounds for being accorded standing to do so. That the Committee has never attempted to do.

The Committee first objected to the interim DIP financing order (entered on February 15,

---

[10] *Id.*

3

2006, "Interim Order") on the specific grounds that it did not provide for an explicit grant of standing, saying:

> In the interest of judicial economy, the Committee requests that the Final Order grant the Committee explicit standing to file any objections and/or to commence any adversary proceedings to challenge the claims or security interests of Mission Bank or to assert any claim or cause of action against Mission Bank . . . . Such explicit authority will eliminate the necessity of the Committee to file a motion to seek standing to commence any such objection or adversary proceeding . . . .[11]

However, the Interim Order was not changed to grant the requested "explicit standing," nor did the Court orally grant such standing.

The Committee again advanced this position in oral argument at the March 3, 2006 hearing on the Final Order:

> [W]e're asking that this order (the Final Order) actually grant the committee the standing to [pursue a cause of action against the Bank] as opposed to make a formal demand on the debtor, to have the debtor say that they're not planning to do that because they waived that under the DIP order, and then to file a motion to get that all done in 60 days from the entry of a final order.[12]

The clear import of these statements is that the Committee did not believe that the language in the Interim Order and in the Final Order granted the Committee standing to pursue these claims against the Bank. Despite these requests and arguments, and despite the Bank's and the Debtor's opposition to the "automatic" grant of standing, the Committee never filed a timely motion seeking the requisite standing, and the language of paragraph 9 of the Interim Order remained unchanged in the Final Order. Moreover, the Committee's statement at the March 3 hearing that it anticipated the need to make a demand on the debtor to pursue claims against the Bank and then to file a motion to obtain standing if the Final Order did not grant the Committee standing, raises the question – Why didn't the Committee take those actions when the eventualities it anticipated came to pass?

Therefore, for the reasons stated above, it is

**ORDERED** that the Defendant's motion to dismiss is GRANTED. It is

---

[11] Committee's "Objection to motion for entry of a final order (1) approving post-petition financing, (2) granting liens and providing superpriority administrative expense status pursuant to 11 U.S.C. sections 363 and 364, (3) providing adequate protection pursuant to 11 U.S.C. section 361, and (4) modifying automatic stay" (Doc. # 118), at 8.

[12] Transcript of the May 3, 2006 hearing on the Final Order, at 28.

**FURTHER ORDERED** that the Committee's cross-motion for standing on a *nunc pro tunc* basis is DENIED.

**SO ORDERED** this 28th day of July, 2006.

/s/ Jerry W. Venters
HONORABLE JERRY W. VENTERS
UNITED STATES BANKRUPTCY JUDGE

A copy of the foregoing was mailed
conventionally or electronically to:
David D. Ferguson
Lisa A. Epps